UNITED STATES PEG WOOD, SHANK & LEATHER BOARD CO. v.
B. F. STURTEVANT CO.

(Circuit Court, D. Massachusetts. March 25, 1903.)

No. 1,595.

1. PATENTS—ANTICIPATION—CONSTRUCTION OF CLAIMS.

Anticipation is not avoided by the fact that the machine of the patent is capable of a use which that alleged to anticipate was not, where such capacity is not referred to in the claims, which cannot be expanded beyond their terms.

2. SAME—ANALOGOUS USE.

Where the principle of operation of two machines is the same, and they are employed for the same purpose, one may be an anticipation of the other, although the material operated on is different.

3. SAME—MACHINE FOR CUTTING SHOE-SHANK STIFFENERS.

The Lewis patent No. 607,602, for a machine for cutting shoe-shank stiffeners, claim 3, *held* void for anticipation.

4. SAME—ANTICIPATION.

While a patentee cannot enlarge the scope of his invention by reference to a function of his machine not mentioned in his claims, yet the actual operation of the machine may be shown by other parties as bearing on a question of anticipation.

5. SAME—MACHINE FOR CUTTING SHANK-PIECES.

The Lewis patent No. 675,661, for a machine for cutting shank-pieces for shoes, claims 1, 2, 3, 4, 12, and 19, *held* void for anticipation, as disclosing no patentable improvement over the mechanism of the machine of claim 3 of the prior Lewis patent No. 607,602. Claim 15, which includes a mechanism for feeding the material to be cut, construed and *held* not infringed.

In Equity. Suit for infringement of letters patent No. 607,602, for a machine for cutting shoe-shank stiffeners, granted to George Ezra Morton Lewis, July 19, 1898, and No. 675,661, for a machine for cutting shank-pieces, granted to J. Lewis, June 4, 1901. On final hearing.

James E. Maynadier and George A. Rockwell, for complainant.
Elmer P. Howe and Benjamin Phillips, for defendant.

HALE, District Judge. This suit is brought for infringement of United States letters patent No. 607,602, dated July 19, 1898, to George Ezra Morton Lewis, for a machine for cutting shoe-shank stiffeners, and of United States letters patent No. 675,661, dated June 4, 1901, to J. Lewis, for a machine for cutting shank-pieces. The complainant contends that the inventions of both patents have been conjointly used by the defendant.

The claims put in issue by this suit are claim 3 of No. 607,602, and claims 1, 2, 3, 4, 12, 15, and 19, of No. 675,661. Claim 3 of No. 607,602 is as follows:

"In a machine for cutting shoe-shank stiffeners, the combination with the cutting block, the knives, and the cam, h; of the reciprocating holder, i, intermediate of the knives, the lever, e', pivoted to the frame, the rods, h', connecting the holder, i, with the lever, e', the roller, o', on the extremity of e', and the spring, g', for pressing the roller, o', against the cam, h, substantially as set forth."

¶ 2. See Patents, vol. 38, Cent. Dig. § 89.

The defenses in the case are anticipation and noninfringement. The claim covers the combination of the cutting block, knives, holder, and actuating mechanism for the holder, of which a detailed description is given. The machine as described in the specification and claim is evidently intended for the purpose of cutting the stiffener or shank between the two oblique knives, but it is true that by simple adjustment the machine may be made to cut between the knives either shank stiffeners or a piece of waste. It appears that the machine has been generally used to cut waste pieces between the knives. The knives operate simultaneously, as appears from the drawing and from the model, although no statement of this simultaneous action is made in the claim.

On the question of anticipation, the defendant refers to several patents shown in the prior patented art, but the leading question of anticipation is raised by the so-called Pulsifer machine. The testimony shows that, in 1892, J. Roak Pulsifer, of Auburn, Maine, had constructed for him a shank-cutting machine for cutting shank pieces with beveled edges from strips of leather board. The original machine was burned in a fire in 1892, but a large number of parts of the original machine have been found and are offered in evidence; a model of the machine, which presents it as in actual use, is before the court. The testimony convinces the court that the machine was in actual and continuous use during several months of the year 1892, and that it cut during that time about 15,000 shanks every working day. The machine is a double machine. It consists of a frame mounted on legs, carrying two main shafts connected together, operating two independent knives for cutting shanks. A cutting bed was provided, in which the original zinc-cutting block was secured, and two knives were made to slide simultaneously in paths obliquely inclined to each other and to the cutting bed. The knives were carried by carriers mounted on slides, which reciprocate in guides, and are actuated by cams mounted upon the main shaft. The cams operate simultaneously, and force the knives into the strip to be cut. Springs are employed to withdraw the knives after they have been forced downward to make their cuts. There are no intervening connections between the cams upon the main shaft and the knife frames, the cams acting directly upon the knife frames. In the center of the shaft is an eccentric for actuating the holder, which engages the material between the knives, and holds the same during their cutting action. The features of the machine are a cutting bed, simultaneously-acting, oblique cutting knives which move towards and from the cutting bed to cut out a shank from the material thereon, a holder for holding the material during the cutting action of the knives, and means for actuating the holder from the main shaft. The machine was not provided with any feed-roll, or any means for feeding the material. The material was fed by hand.

In attempting to differentiate the machine made under claim 3 of the Lewis patent from this Pulsifer machine, the attention of the court is called by the complainant to the fact that the knives of the Pulsifer machine are constructed and arranged solely for cutting shank-pieces between them, and that it cannot be arranged to operate in any other

manner; whereas the machine of the Lewis patent has the capacity of adjustment in such a way as to cut waste pieces from the veneer between the knives. But the claim at issue in this suit is silent as to whether the knives cut waste pieces or shanks from the veneer between them. In the construction of a patent, the claim is the vital thing to be considered. The Lewis machine has a capacity for adjustment which the Pulsifer machine did not have, but that capacity for adjustment forms no part of the claim in issue, and is not referred to in the claim, and cannot now be imported into it for the purpose of enlarging and changing its general meaning and scope. It is well settled that, "when the terms of a claim are clear and distinct, the patentee in a suit brought upon the patent is bound by it. * * * He can claim nothing beyond it." Judge Colt has very fully commented upon this principle of the patent law in Goodyear Shoe Machinery Co. v. Spaulding, 49 C. C. A. 88, 110 Fed. 400. The Supreme Court have also discussed it in The Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344. It is urged, too, that in the Pulsifer machine the knives are forced forward by cams and retracted by springs, while in the Lewis machine the knives are actuated positively in both directions by connecting rods. But the claim at issue in the Lewis patent does not contain any reference to the means for actuating the knives, but leaves it to be inferred that suitable means should be employed. Great stress is also laid upon the fact that the Pulsifer machine acted only upon leather board and not upon wood, but this presents no vital difference. The principle of operation of the machine is precisely the same upon leather board as upon wood. Mr. Justice Gray, in the Locomotive Truck Company Case, 110 U. S. 490, 4 Sup. Ct. 220, 28 L. Ed. 222, clearly states the well-known principle that the application of an old process or machine to a similar or analogous subject, with no change in the manner of the application, and no result substantially distinct in its nature, will not sustain a patent. After an examination of claim 3, and the specification and models of this Lewis patent, and a careful study of the Pulsifer machine, the court comes to the conclusion that the Pulsifer machine clearly anticipates the Lewis machine.

With reference to patent No. 675,661, claims 1, 2, 3, 4, 12, 15, and 19, are in issue in this suit. Claims 1, 2, 3, 4, 12, and 19, called the common drive-shaft claims, are as follows:

"(1) In a machine for cutting bevel-ended shank-pieces from a strip or ribbon obliquely disposed, simultaneously-cutting knives co-operating to sever a single shank-piece at each operation thereof, a common drive-shaft, and means for connecting the knives with the drive-shaft for operating said knives, substantially as described.

"(2) In a machine for cutting bevel-ended shank-pieces from a strip or ribbon obliquely disposed, simultaneously-cutting knives co-operating to sever a single shank-piece at each operation thereof, a common drive-shaft, and arms for reciprocating said knives, one end of each connected to a knife and the other end engaging an eccentric on the drive-shaft, substantially as described.

"(3) In a machine for cutting bevel-ended shank-pieces from a strip or ribbon, a cutting-block obliquely disposed, simultaneously-cutting knives co-operating to sever a single shank-piece at each operation thereof, a common drive-shaft, means for connecting the knives with the drive-shaft for operat-

ing said knives, and means for straightening the strip or ribbon and pressing it against the cutting-block, substantially as described.

"(4) In a machine for cutting bevel-ended shank-pieces from a strip or ribbon, a cutting-block obliquely disposed, simultaneously-cutting knives co-operating to sever a single shank-piece at each operation thereof, a common drive-shaft, means for connecting the knives with the drive-shaft for operating said knives, means for feeding the strip or ribbon between said cutting-block and said knives, means for straightening the strip or ribbon and pressing it against the cutting-block, and means for successively operating the feeding means, the knives and the straightening and pressing means, substantially as described."

"(12) In a machine for cutting shank-pieces from a strip or ribbon, a cutting-block, simultaneously-cutting knives co-operating to sever a single shank-piece at each operation thereof, a common drive-shaft means for connecting the knives with the drive-shaft for operating said knives, and means for feeding the strip or ribbon between said cutting-block and said knives, substantially as described."

"(19) In a machine for cutting bevel-ended shank-pieces from a strip or ribbon, a cutting-block, obliquely-disposed bars carrying obliquely-disposed simultaneously-cutting knives, a common drive-shaft, and arms for reciprocating said bars and knives, one end of each connected to a knife-bar and the other end to the drive-shaft, substantially as described."

Claims 1, 2, and 19 present the combination of simultaneously-cutting knives co-operating to sever a single shank-piece at each operation, a common drive-shaft, and means for connecting the knives with the common drive-shaft for operating the knives. In the first Lewis patent, claim 3 describes "knives," and does not say affirmatively that they act simultaneously, but the court is satisfied, upon an examination of the action of the machine, and from the testimony in the case, that the action of the knives is simultaneous. While the patentee of the first Lewis patent would not be allowed to change the scope of his claim by referring to a function of his machine which is not named in his claim, still, when the question of the actual operation of his machine is raised by other parties on the question of anticipation, such patentee cannot be allowed to escape from the existing functions and actual operation of his machine.

In the matter of driving the knives in the two patents, it appears that in the first Lewis patent the knives are actuated from two crank shafts, which are driven from a common drive-shaft by means of intermediate gears. The difference in the action between the two Lewis patents is that in the first there are more parts than in the second between the common drive-shaft and the knives which are actuated from it. But this is not a difference which appears to the court to involve invention, especially when we examine the Watson patent of 1875, cited in the history of the prior art, in which a common drive-shaft, by means of two eccentrics, operates the two knives.

Claim 3 merely provides means for straightening the ribbon, and claim 12 merely adds means for feeding the ribbon, and claim 4 adds both means for feeding and straightening the ribbon, and pressing it during the operation of the cutting knives. It appears clear that if claims 1, 2, and 19 are anticipated by the first Lewis patent, so also are claims 3, 4, and 12. Nothing patentably new, in view of the first Lewis patent, is presented in claims 3, 4, and 12.

The complainant seeks to differentiate the machine of the second

Lewis patent from that of the first by showing that, in the second Lewis patent, the improvement upon the first Lewis patent consists in having a common drive-shaft, on which eccentrics are mounted, these eccentrics serving to give a simultaneous and exactly similar movement to both knives; whereas the first Lewis patent drives the knives through intermediate gears from auxiliary crank-shafts. But it appears that the same result is attained by both machines, and that the difference involves no invention. The defendant points out with force that in the Watson, 1875, patent, before alluded to, a common drive-shaft, carrying eccentrics, gave an exactly similar movement to both of the knives, so that this element in the second Lewis patent was not new. And some of the expert testimony shows that it would be the work merely of an experienced mechanic to swing one of the eccentrics around the shaft to such a point as would bring both knives down to the bed at the same time in the rotation of the main shaft. The testimony in the case convinces the court that the mode of action and the mode of producing shanks are identical in the two Lewis patents. The court is of the opinion, after examination of the specification, claims, models, and drawings of the two patents in issue, that the machines of the two patents, so far as relate to claim 3 of the first patent, and claims 1, 2, 3, 4, 12, and 19 of the second patent, are equivalent as to construction, and identical as to operation and result obtained. We are of the opinion that claims 1, 2, 3, 4, 12, and 19 of the second patent are anticipated by claim 3 of the first patent.

Claim 15 of the second Lewis patent presents another question. That claim is as follows:

"In a machine for cutting shank-pieces from a strip or ribbon, a main frame, a feed-roller mounted therein, an auxiliary frame hinged to said main frame, having a roller mounted in its outer end, said rollers adapted to co-operate with each other to feed the strip or ribbon to the cutting knives, and means for holding said rollers in or out of operative position, substantially as described."

The claim covers a shank-cutting machine, a main frame, a feed-roller, an auxiliary frame hinged on said main frame, having a roller mounted in its outer end, said rollers being adapted to co-operate with each other to feed the strip of veneer to the cutting knife, and means for holding the rollers in or out of operation. After an examination of the machine and drawings of the second Lewis patent, and the machine of the defendant, the court can find in the defendant's machine no means for holding the feed-roller in or out of operative position.

In the machine of the second Lewis patent, the auxiliary frame is held in or out of operative position by a pin, $e^{16}$. In the defendant's machine there is no equivalent for this pin. In that machine the auxiliary frame is mounted upon a slide which slides upon guide-ways upon the main frame, and which has no means for holding it either in or out of operative position. The strip of steel on the frame of the machine, against which the sliding frame brings up in the defendant's machine, only partially performs the functions of $e^{16}$. It merely holds the roller from advancing towards the knives. It

seems to the court that the defendant's machine does not embody the combination defined by claim 15 of the second Lewis patent.

Some of the expert testimony points out that in the defendant's machine there are no means provided for holding the slide-carrying portion of the feed mechanism in operative or inoperative position, but that it is simply placed in operative position by the operator when desired, and stays there, there being nothing in the performance of its work which tends to dislodge it; or it is removed from operative position by taking it off from the machine if desired, there being nothing to keep it in inoperative position. In this connection the Ward patent of 1894 is pointed out as bearing upon this question, which shows an upper feed-roller mounted in a carrying frame, which may be turned in or out of operative position, when desired; and it is urged with force that this patent to Ward shows that it is old, in machines for cutting sheet material, to provide means for permitting the feed-rolls to be moved so as to allow access to parts covered by them. This Ward patent shows a construction, previous to the Lewis patent, which resembles defendant's construction. It appears that if the claim were to be construed to cover defendant's construction it would present no novelty, but would be anticipated by Ward.

In the history of the application for the second Lewis patent it appears in testimony that a broad claim was originally filed which would have covered the defendant's construction, namely, claim 16 of the original application, which was rejected by the Patent Office on the strength of the first Lewis patent, and then the present claim 15 was inserted and allowed. This claim 15 contained the limitation which is now found, and which we have commented upon. After having this broad claim rejected by the Patent Office, it is inconsistent, under the obvious rules of the patent law, for the complainant to contend that such scope should be given to claim 15 as was sought for in claim 16, presented to the Patent Office and disallowed. The court is of the opinion that claim 15 of patent No. 675,661 is not infringed by the defendant's machine, because that latter machine has no means for holding the feed-roll in or out of operative position.

The court therefore holds that in the first Lewis patent, No. 607,602, in the matter of claim 3, the only claim in issue, there has been anticipation, and that in the second patent, No. 675,661, claims 1, 2, 3, 4, 12, and 19 have been anticipated, and that there has been no infringement of claim 15. The decree must therefore be that the bill be dismissed, with costs to the defendant.

Bill to be dismissed, with costs. Let the defendant file a draft decree on or before April 5, 1903, dismissing the bill, with costs. The defendant may file corrections thereto on or before April 18, 1903.