### WILLS v. SCRANTON COLD STORAGE & WAREHOUSE CO.

(Circuit Court of Appeals, Third Circuit. April 30, 1907.)

#### No. 6.

1. PATENTS—INVENTION—REFRIGERATOR BUILDING.

   The Wills reissued patent, No. 12,300 (original No. 742,540), for a refrigerator building the essential feature of which is the use of flaps or other devices for closing the space between the elevator car and the sides of the shaft to prevent the escape of cold air from the refrigerating rooms when the elevator is in use, is manifestly void on its face for lack of invention.

2. SAME—SUIT FOR INFRINGEMENT—PATENT INVALID ON ITS FACE.

   Where the invalidity of a patent for lack of invention is clear upon its face, the court may so declare it sua sponte, although the question is not raised by the pleadings, and may dismiss a bill for its infringement.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 551.]

Appeal from the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 147 Fed. 525.

Herbert Knight and Edmund Wetmore, for appellant.

R. L. Levy, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

GRAY, Circuit Judge. This is an appeal from a final decree of the circuit court for the middle district of Pennsylvania, dismissing the bill of the complainant-appellant. The bill claims infringement by the defendant of a certain patent for an improvement in refrigerator buildings, being Reissued Letters Patent No. 12,300, dated January 3, 1905. Defendant, in its answer, sets forth the defense of noninfringement, and upon issue joined, testimony in support of said de-

fense was duly taken, as set forth in this record.    At the argument in the court below, however, it was contended by defendant that the device set forth and described in the letters patent did not, on the face thereof, show patentable invention, and this contention having been sustained, it was upon this ground that the decree dismissing the bill was entered.

Refrigerator buildings containing cold storage rooms on their several stories, are not very old in the refrigerating art.   The use of elevators to carry commodities to the several floors, to be stored, caused an escape of cold air through the spaces in the elevator shaft surrounding the car, when the door communicating therewith was opened.    It appears from the evidence and by the statements of the patent itself, that the device most frequently resorted to, to prevent, or at least diminish, the loss of cold air in this way, was to provide a small ante-room, into which the shaft of the elevator was introduced.    This ante-room was refrigerated in the same way as the storage rooms, and whatever cold air escaped down the shaft, when the elevator door was opened, escaped from this ante-room.    The goods, being held in the ante-room until the door communicating with the elevator shaft was closed, could then be moved into the storage room, through a door which until then had been kept closed.    In this method, there was the obvious objection that the temperature of the ante-room was somewhat raised by each opening of the elevator door, so that when the door to the storage room was opened, its temperature was affected by the temperature of the ante-room.    There was also, as stated in the specifications, the disadvantage of the warm air coming up the shaft condensing its moisture on the refrigerator pipes, and producing a damp and unwholesome atmosphere.

The claimed invention of the patent in suit is the making air tight the space between the car and the shaft in which it travels, thus permitting the elevator shaft to be introduced directly through the cold storage rooms on the several floors, the only effect in the temperature of which, would be that produced by the air confined in the small space of the car itself when the door was opened.    This was undoubtedly an advantage in requiring but one handling of the goods to be stored, and the saving of space occupied by an ante-room.    This has all been stated in the specifications, as follows:

"Heretofore in refrigerating plants and cold storage buildings it has been customary where elevators were employed to convey merchandise from one floor to another to provide a vestibule or anteroom between the elevator shaft and the cold rooms in order that the cold air in the latter compartment should not escape up or down the elevator shaft while the entrance thereto was open.  This escape of the cold air was made possible because the cab did not fit the shaft and the shaft openings with sufficient closeness to prevent a free and extensive movement of air at and around its sides or edges and also because during the rush hours of business the doors between the rooms were often left open.  To obviate these difficulties as much as possible, the anteroom was provided as a sort of air lock or buffer, and the space so employed was by reason of the shifting temperature rendered useless for storage and was consequently a loss of space.  This room was also by reason of the differing temperatures wet and musty and always unsanitary.  My present invention is designed to utilize this space and make it clean and wholesome and, in fact, to absorb the space in the general storage room and make the cab a traveling anteroom, and to this end I make the cab practically air-·

tight, except the open face or faces or fronts, and provide flexible flaps, which bridge over and between the edges of the cab and the corresponding opening in the elevator shaft and provide a vestibule. The result will be that while the cab is discharging or taking on goods the air in the adjoining room cannot escape through or around it. The room and space heretofore rendered unavailable for storage purposes can thus be utilized. In the employment also of the old form of anteroom as an air-lock or buffer it implied and required a double handling of the goods. It constituted an intermediary room only. This room in connection with my invention I eliminate and dispense with and absorb into the general storage room. Air locks are established by merging the air in the elevator car and each floor when they are thrown together in my present invention, as will be explained."

There are six claims of the patent in suit, the first of which is as follows:

"(1) A refrigerator-building comprising two or more floors, an elevator shaft, means of access between the floors and said shaft, an elevator-car providing a traveling anteroom operating in said shaft, and means whereby an air-lock is established between said elevator-car and each floor when they are thrown together."

The other claims are more specific as to means for closing or bridging the space between the car and the sides of the elevator shaft. The question, however, as to patentability is applicable to them all. It was admitted by the counsel for the appellant, that there was no invention in the means employed to make the space between the elevator shaft and the car air-tight at the different floors. His contention, however, was that the invention lay in the conception or "happy thought" that an ante-room might be dispensed with, and the goods to be refrigerated directly introduced into the cold storage rooms, by simply making the shaft air-tight by any well-known device. This is a forceful, as well as an ingenious, way of stating appellant's case, and might as to some combinations of old elements be applicable and decisive. Here, however, it fails to convince us that patentable invention was involved in the combination of the patent in suit. The essential feature of the combination was making air-tight the shaft of the elevator around the car, so as to prevent the escape of cold air from the floor at which the car was being loaded or unloaded. When the difficulty to be overcome is so obvious a one, as the escape or entrance of air through the open spaces between the elevator car and the shaft through which it travels, into the rooms communicating therewith, it is hard to conceive what invention there can be in making air-tight those open spaces by bridging them with rubber flaps, or any of the other well-known devices for such purposes. It would seem that the conception or thought of doing so, was as obvious as the means employed. To put weather strips on a window or door, to prevent the ingress of cold air or the escape of warm air, does not involve invention, any more in the thought than in the means employed.

As pointed out by the learned judge of the court below, the fact that this combination dispensed with the use of the ante-room, and made necessary only one handling of the goods carried, though it may establish the utility essential to patentability, does not of itself prove invention. Neither is the argument for the patentability of the combination advanced by the constant iteration of the appellation "traveling

ante-room," as applied to the elevator car. It is still an elevator car, as it was before the spaces between it and the shaft were made airtight. It performs the same function and has the same relation to the cold storage room that it had to the ante-room. It is the packing of the piston, the making air-tight of the shaft in the space around the car, that makes possible the introduction of the elevator directly into the cold storage room.

We have carefully considered the cases referred to by appellant's counsel, in which courts have refused to sustain demurrers to the patentability of the device on the face of the letters patent, and we have not been unmindful, in the consideration of this case, of the admonition so frequently made by courts, that patents should not be declared invalid, upon demurrer or otherwise, upon the face of the patent itself, unless the invalidity so clearly appears that no testimony can change the legal aspect of the case, and that if doubt exists, the complainant is entitled to its benefit. But in cases thus clear on the face of the patent itself, courts may, even where the question is not raised by the pleadings, sua sponte, declare the patent invalid and dismiss the bill. That the power and duty of the court may have this extent, is clearly held by the Supreme Court in Brown v. Piper, 91 U. S. 37, 43–44, 23 L. Ed. 200. Slawson v. Grand St. Ry. Co., 107 U. S. 649, 652, 2 Sup. Ct. 663, 27 L. Ed. 576.

In view of the clear and elaborate opinion of the learned judge of the court below ([C. C.] 147 Fed. 525), it is unnecessary to further extend the discussion of the single question involved in this case.

The decree below is therefore affirmed.