WRIGHT v. WISCONSIN LIME & CEMENT CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1917.)

No. 2393.

1. PATENTS ☞310(9)—SUIT FOR INFRINGEMENT—DISMISSAL ON MOTION.
   Where a bill for infringement states a prima facie case and the patent discloses no invalidity on its face, the court is not justified in dismissing the bill on motion on the ground that the patent is invalid for lack of invention in view of the prior art unless the facts upon which invalidity is predicated are so widely and commonly known that the court may take judicial notice of them, and are such as to preclude the possibility that complainant can produce any competent and relevant evidence to sustain the presumptive validity of the patent.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 535–540.]

2. PATENTS ☞328—VALIDITY—ROOFING MATERIAL.
   The Wright patent, No. 1,022,764, for a roofing material, is not so clearly invalid for lack of invention as to warrant the dismissal of a bill for its infringement on that ground on motion.

3. WORDS AND PHRASES—"PULVERIZED BRICK."
   "Pulverized brick" is brick that has been reduced to a powder.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Stephen G. Wright against the Wisconsin Lime & Cement Company and others. Decree for defendants, and complainant appeals. Reversed.

The bill, which is in the usual form, charges infringement of Wright's patent No. 1,022,764, for roofing material, and prays injunction against further infringement. The claims of the patent, as appears from the bill, are:
"1. As a new article of manufacture, roofing composed of sheet water-proof material having its surface composed of comparatively coarse particles of baked earthy material of predetermined coloring whereby a roofing surface is produced presenting a coloring permanent under wear, for the purpose set forth.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"2. As a new article of manufacture, roofing composed of sheet water-proof material having its surface composed of particles of baked earthy material of predetermined coloring, said particles being partially embedded in a water-proofing coating and extending above the plane thereof, whereby a roofing surface is produced presenting a coloring permanent under wear, for the purpose set forth."

The specification suggests 10 to 12 mesh as the size of the particles, but states that this may vary as desired. It variously sets forth the particular virtues of roofing equipped with this material typically as follows: "The surface-coatings thereof, by reason of the materials of which the particles 4 are formed, retain their original color indefinitely, as each particle is of homogeneous color throughout, and the wearing away of these particles under the action of the elements has no effect in the way of impairing the preservation of the color originally presented by the roofing. Another advantage due to the use of the material stated, in its preferred form, for the surface coating of the roofing is that of durability, in that such material, when crushed, presents not only an irregular fracture, but a roughened surface due to its porosity, and thus a tenacious bond between the particles 4 and the coating 3 is produced when these particles are embedded therein."

The defendant company answered, denying invention and the validity of the patent, and it thereupon filed its motion to dismiss the bill for the following stated reasons:

"First. That it does not appear from the said bill that the patent alleged to be infringed describes and claims anything patentable in view of the art of roofing material well and commonly known at the time of the alleged invention by the said Stephen G. Wright.

"Second. That the roofing material described and claimed in the patent of the United States No. 1,022,764, to Stephen G. Wright, dated the 9th day of April, 1912, was well known and in common use the time of the alleged invention of the same by the said Stephen G. Wright.

"Third. That the said patent No. 1,022,764 sued upon is void and of no effect for that it describes and claims a roofing material well known and embodying neither novelty or invention in view of the well-known art at the time of the alleged invention by Stephen G. Wright.

"Fourth. That it does not appear from the bill of complaint herein that the plaintiff, Stephen G. Wright, is entitled to any relief whatever."

Upon hearing the motion, the court dismissed the bill, and plaintiff appeals.

Russell Wiles, of Chicago, Ill., for appellant.
Luther V. Moulton, of Grand Rapids, Mich., for appellees.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] The bill aptly and broadly charges infringement by defendant of the patent therein recited, which appear on their face to be in due and regular form. The letters patent themselves reveal nothing because of which, as a matter of law, they are void; and the conclusion of invalidity must, if at all, flow from facts apart from the letters patent. But as the dismissal was upon motion, the facts upon which to predicate the invalidity must be such as are so widely and commonly known that courts will take judicial notice of them without proof of their existence. Of such a situation this court said in Lange v. McGuin, 177 Fed. 219, 101 C. C. A. 389:

"Of course, every bill is written against the background of common knowledge; and in that view a demurrer may be said to invite the chancellor to take judicial notice of the background. But if a bill, in and by its own aver-

ments, states a prima facie case, that case cannot properly be overthrown by the chancellor merely on the ground that he judicially knows of facts that would support an answer. His judicial knowledge must go farther, and be so broad and all-embracing that he can properly hold that no facts exist that would tend to controvert the supposed answer and support a replication and the bill. This is so because, if such facts exist, the complainant is entitled to a hearing where he can present and argue the facts, and such a hearing cannot be had on demurrer to the bill."

To the same effect is Bronk v. Charles H. Scott Co., 211 Fed. 338, 128 C. C. A. 17, decided in this court.

[2] To sustain the motion to dismiss, the court must take judicial notice, either that before the alleged invention of Wright particles of baked earthy material of predetermined color, applied as described and claimed in the invention, were used or known in the roofing material art, or that in the employment of such particles after the manner of the patent there is merely the substitution of one for another of old well-known materials, whereby invention is not involved.

The court judicially knows that long before Wright there were roofs, and that various roof surfacings were made by compounding different materials; and it likewise knows that baked earthy materials are among the earliest of manufactures, more ancient indeed than recorded history itself, and that such baked materials are very lasting, and are generally of permanent and uniform color throughout. But does the court judicially know that granular particles of such materials were in use for surfacing composition roofing prior to Wright's invention?

It may be that prior to Wright the baked earthy particles of the patent were in common use for such purpose, but, if so, is that fact so well and commonly known among well-informed persons that a court may judicially notice the fact and predicate a final decree thereon? We venture to say that aside from those skilled in the roofing material art there are comparatively few well-informed persons who know whether or not such baked earthy particles were then or are even now so used. That the fact may have been known to those familiar with the art is not alone enough to warrant judicial assumption of the fact.

Perhaps some judges, like some others in various professions and occupations aside from this particular art, may have had occasion for observation, bringing to them special knowledge on the subject not possessed by persons generally. But this would fall short of that general and widespread knowledge of a fact or condition which would warrant a court, without proof, in taking judicial notice of it.

It is quite true that, as claimed for appellee, courts will take judicial notice of books and other published works of well-recognized merit and authority. But practically, courts with human limitations of their members, do not in all cases instinctively or otherwise know of all such works and their contents. Presumably, able, earnest, and diligent counsel will direct the attention of the court to such works and the parts thereof which are claimed to be pertinent. On this subject we quote from the brief of the appellees:

"The court is at liberty to refer to and consult well-known text-books, encyclopedias, dictionaries, etc., accessible to the public, such as Knight's Ameri-

can Mechanical Dictionary, p. 1973, 'Roofing Fabrics,' Houghton, Noffin & Co., 1881, or Suisbaugh's Digest of Paving and Roofing Compounds, 1873, in each of which pulverized brick is mentioned as a surfacing material for tarred roofing, showing that the device of the patent was old and is anticipated in the art."

The "Digest" referred to was not before us on argument, and we have been unable to find a copy of it. The members of the court sitting herein have no familiarity with it, and although it may be that the work is indeed one of merit and authority, a court could not well predicate action solely upon its revelations, without definite and certain knowledge of what they are. Counsel merely gave their version of what is alleged to be there stated, without quoting the language, from which we might be able to determine for ourselves whether in fact the device of the patent is there so clearly shown or suggested that the court may judicially find it was old in the art. But, at any rate, if this work, however authoritative, does not show the prior art more definitely than is claimed for it in the above quotation from the brief, the court could not judicially say that the alleged novelty of the patent is thereby shown or suggested, any more than it is in Knight. Knight is admitted on both sides to be a work of standard authority. In appellees' brief attention is not directed to any particular part of this very voluminous work, which it is claimed affords a sufficient basis for the court's judicial knowledge of the prior art. In volume 2 of the edition of 1877, p. 1973, under the general title "Roof," we find this:

"Among other kinds of roof coverings may be cited fabric or paper saturated in tar and covered with sand and gravel. Fabric or paper treated with a material which will resist sun, rain, and frost. Among the compositions for this purpose are the following."

Then follow 23 formulæ, of which the one which to us seems the nearest the patent is the following: "Sifted gravel, 3; pulverized brick, 0.5; litharge, 0.12; linseed oil, 0.25; Japan varnish, 0.08"—the numerals evidently indicating the number of parts of each ingredient.

[3] Whether all of these ingredients are to be mixed into a mass and thus applied, or whether the dry materials are to be mixed together and then spread upon a sticky substance applied to the roofing sheets, is not apparent from the article. If the former, then the court surely could not judicially say that such a product would suggest the patented device. "Pulverized brick" is brick which is reduced to a powder, and this ingredient of a mixture, as appears from Knight, does not of absolute necessity suggest the "comparatively coarse particles of baked earthy materials of predetermined coloring" of the patent claim 1, spread upon and adhering to the sheet. Nor does the Knight formula require or permit the court of its judicial knowledge to adjudge that such a mixture of various materials, of which pulverized brick is so small a component part, is the product of the patent, or would necessarily suggest the patented article, whose surface is composed of the particles of baked earthy materials, unmixed with other things.

It may be possible that through evidence of those skilled in the art connection between the Knight formula and the patented article would abundantly appear. But this cannot be adjudged from the face of the bill.

It is urged that the court judicially knows that gravel and the like substances for surfacing roofs, through being spread upon a sticky coating such as tar were in long and common use before Wright, and that brick and other baked earthy substances, being likewise old, the employment of brick particles in the place of gravel and like substances was simply and only the substitution of one for another of well-known materials, not involving any invention. Conceding that gravel and such substances were in well-known and general prior use for such purpose, and, of course, that brick is old, can it be judicially said that in thus surfacing the roofing sheets with coarse baked earthy particles as provided in the patent a novel and useful result has not been achieved, and that therein invention is in no event involved? The Patent Office presumably found novelty and utility in Wright's invention, and the presumption of the validity of the patent which it granted may not lightly be set at naught.

We deem it within the range of possible conception that there may be extant evidence which might bring this patent within the class of cases of which Westmoreland Specialty Co. v. Hogan, 167 Fed. 327, 93 C. C. A. 31, is typical. There a patent was upheld for a celluloid cap for salt shakers because it appeared from the evidence that by the substitution of celluloid for metal as theretofore used a distinctly novel and beneficial result was achieved involving invention, even though such result or possibility was not pointed out in the patent, and at the time of the grant was unknown to the patentee.

In George Frost Co. v. Cohn et al., 119 Fed. 505, 56 C. C. A. 185 (2d C. C. A.), the patent consisted in the substitution of rubber for metal in a hose supporter, and the court, sustaining the patent, said:

"It is not necessary to the patentable novelty of a device, which consists in employing a new material for an old one in constructing one of its parts, that the substitution should involve the discovery or utilization of an unknown or unexpected property of the material. This is one of the tests of patentable novelty, but it is not the only one. Whether the feature of novelty is the employment of a new material, or a change of adaptation in other respects, the inquiry always is whether what was done involved the exercise of inventive faculty as distinguished from the ordinary skill of the calling."

Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, the "door knob" case, urged as here controlling, is hardly applicable at this stage of the litigation. That involved an action at law for damages for infringement of a patent granted for door knobs of baked clay or porcelain material. The court charged the jury inter alia that if from the evidence the jury believe "no more ingenuity was required to construct a knob in this way than that possessed by ordinary mechanics acquainted with the business, the patent was invalid, and the plaintiffs were not entitled to a verdict." The jury found for the defendant, and the Supreme Court sustained the judgment rendered on the verdict, saying in concluding the majority opinion:

"If the foregoing view of the improvement claimed in this patent be correct. it is quite apparent that there was no error in the submission of the questions presented at the trial to the jury; for unless more ingenuity and skill in applying the old method of fastening the shank and the knob were required in the application of it to the clay or porcelain knob than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skillful mechanic, not that of the inventor."

In Krell Auto Grand Piano Co. v. Story & Clark Co., 207 Fed. 946, 125 C. C. A. 394, with reference to an appeal from a decree dismissing on demurrer a bill for infringement of patent, we said the following, which accurately describes the situation in the instant case as we view it:

"Granting that appellees' showing and argument, in the absence of other evidence, might justify a finding that the defense of want of invention was sustained, we cannot find as a fact that judicial knowledge extends to the point of knowing that appellant can produce no competent and relevant evidence in support of the patent's presumptive validity and in antagonism of the inference of ultimate fact sought to be drawn from the evidence for the defense."

The decree of the district court is reversed, and the cause remanded, with direction to deny the motion to dismiss the bill.