## LUTEN v. KANSAS CITY BRIDGE CO.

(District Court, W. D. Missouri, W. D. March 24, 1921.)

### No. 171.

**1. Patents ⬬310(1)—Motion to dismiss bill for infringement granted, when lack of invention pleaded.**

While a motion to dismiss a bill for infringement of a patent will not be sustained, except in a case sufficiently clear, where the clear disclosures of the bill itself, the exhibits attached thereto, and the letters patent. of which profert is made, show lack of invention, and it is sufficiently certain that such disclosures cannot be substantially aided by testimony, the bill will be dismissed.

**2. Evidence ⬬20(1)—Use of falsework in construction is matter of common knowledge.**

It is a matter of common knowledge that falsework, so called, is employed in the support of bridges and arches during construction, and more particularly those in which concrete is used as a prominent material.

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Patents ☞328—No. 802,004, for method of constructing arches, and No. 1,106,880, for falsework, held to lack invention.**
    Patent No. 802,004, for a method of constructing arches, and No. 1,106,880, for falsework used in the support of arches, etc., during construction, *held* invalid for want of invention or patentable novelty.

4. **Patents ☞17—Invention cannot depend on inherent attributes of natural substances.**
    Patentable invention cannot be made to depend on well-known inherent qualities, attributes, and functions of natural substances, such as wood, iron, or steel.

In Equity. Suit by Daniel B. Luten against the Kansas City Bridge Company. On motion to dismiss. Sustained.

Justin D. Bowersock, of Kansas City, Mo. (Daniel Royse and Russell T. Marshall, on the brief), for plaintiff.

Samuel W. Sawyer, of Kansas City, Mo. (O. W. Pratt and Lathrop, Morrow, Fox & Moore, all of Kansas City, Mo., on the brief), for defendant.

VAN VALKENBURGH, District Judge. Defendant moves to dismiss the bill in the above-entitled cause for want of equity. The bill of complaint is founded upon two letters patent numbered, respectively, 802,004 and 1,106,880; the first entitled "Centering for and Method of Constructing Arches," and the second, "Falsework." Both inventions briefly have for their purpose to provide supports for falsework in the erection of arches, which shall have sufficient strength, and which are specially adapted to be removed in such a manner that there are gradually developed in the structure supported on the falsework the stresses to which such structure is to be subjected.

[1] It may be conceded at the outset that the motion to dismiss will not be sustained, except in a case sufficiently clear. Such a motion is proper practice, and may be sustained by the clear disclosures of the bill itself, the exhibits attached thereto, and the letters patent, of which profert is made. Where there is sufficient certainty that such disclosures cannot be substantially aided by testimony, it is the duty of the court to sustain the motion to obviate the necessity of increasing the expense and performing the labor of taking proofs.

[2, 3] It is a matter of common knowledge that falsework, so-called, is employed in the support of bridges, arches, and still more particularly those in which concrete is used as a prominent material. It seems to be recognized, especially in the case of large arches, that the centers should be lowered very slowly; otherwise, the momentum acquired by so heavy a body as the arch, in descending suddenly, might possibly affect its shape, or even its safety. This is not new in the art. The engineering problem presented is, first, to erect a support sufficient to sustain the structure; and, second, to remove that support at the subsequent proper time in the manner described. These things have been accomplished in the past by well-known methods, which, as conceded at the argument, are still the prevailing ones.

[4] These methods involve the use of timbers of sufficient strength

for the purpose, and the employment of a system of removable wedges to facilitate gradual removal. From this method it is but an obvious departure to substitute for a large timber a smaller one, and to supply the difference in sustaining strength by the addition of braces. Scaffolds and similar structures are but everyday illustrations of this principle. Patentable invention cannot be made to depend upon well-known inherent qualities, attributes, and functions of natural substances, such as wood, iron, or steel. It is quite obvious that a timber too small in itself to support a given load, and raised to the required strength by the addition of braces, will buckle or bend if the braces are removed; that it will do so more or less gradually in exact proportion to the ratio its sustaining power bears to the load it is called upon to carry. The computations of these stresses are simple mathematical engineering problems. They involve no element of invention, but merely the application of that professional and mathematical skill which must be supposed to flow from technical training coupled with experience. So much for the novelty which is supposed to attach to letters patent No. 802,004.

The second patent involves only a mechanical equivalent for the structure just described. Instead of a large and sufficient sustaining member, or a smaller member made sufficient by braces, two individually inadequate members are employed, placed in juxtaposition, and set together so that their combined cross-section is approximately T-shaped. This method of reinforcement has long been familiar in everyday life and is frequently seen in carpentry. Instead of by nailing, the union and greater stability is produced by wiring. The supporting strength of the combination is, of course, computed by the engineer. When this support is gradually to be removed, as above stated, disunion is effected by removing the wire; then the innate properties of the timbers come into play. Natural law asserts itself, and the timbers, no longer receiving mutual support through union and position, buckle or bend, as in the first patent discussed.

I am unable to perceive in either of these patents evidences of inventive genius, as distinguished from mechanical and engineering skill stimulated by ordinary technical study and experience. The decision of this case turns upon this consideration, and at the argument the court has been aided and instructed by text-books, models, and illustrations, photographic and argumentative. Everything that can bear upon this phase of the controversy in a fuller hearing has been presented, indulged, and considered. The principles involved cannot be altered or expanded in any conceivable way. Being of opinion that the devices in question do not embody patentable novelty and invention, the plaintiff's case must fail.

The motion to dismiss is sustained.