## LIONNE CO. v. CUSHMAN–HOLLIS CO.

(Circuit Court of Appeals, First Circuit. August 6, 1925.)

No. 1834.

1. **Patents ⊚⇒27(1) — Using old process for new and analogous purpose is not "invention."**

It is not "invention" to use an old process for new and analogous purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

2. **Patents ⊚⇒168(2)—Court cannot read into claims what patentee read out of patent in canceling claims.**

Court cannot read into claims what patentee read out of his patent when he canceled the original claims.

3. **Patents ⊚⇒328—1,339,462, for process of protecting white shoes during manufacture, held void for want of invention.**

The Lionne patent, No. 1,339,462, for process of protecting white shoes from soiling during manufacture by application of "white dope," long used for such purpose, by means of an air brush, instead of old method, by ordinary brush or sponge, held void for want of invention.

Appeal from the District Court of the United States for the District of Maine; John A. Peters, Judge.

Suit by the Lionne Company against the Cushman-Hollis Company. Decree for defendant (299 F. 983), and plaintiff appeals. Affirmed.

Odin Roberts, of Boston, Mass. (Charles D. Woodberry, of Boston, Mass., on the brief), for appellant.

Frederick L. Emery, of Boston, Mass. (Ellis Spear, Jr., and Preston Upham, both of Boston, Mass., and Eiffel B. Gale, of Yonkers, N. Y., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In this patent infringement case, the court below in a careful and learned opinion (299 F. 983) held the patent void for lack of invention, and also because of prior use and knowledge by others. The patent, No. 1,339,462, was applied for on July 5, 1918, and issued May 11, 1920. It relates to a method of protecting white shoes from soiling during the process of manufacture. Two claims are in suit.

Claim 12 is a process claim and is as follows:

"Claim 12. The method of temporarily protecting the surface of an article, which consists in applying a thick viscous fluid composition in a finely divided state to the surface to be protected to produce thereon a layer of dense formation, drying said layer and subsequently removing said layer in fragments."

This is the gist of the alleged invention; if it fails, so does claim 1, for the manufacture.

Claim 1 purports to cover the article—a shoe protected during manufacture by this process—and is as follows:

"Claim 1. A shoe having protecting means for its surface consisting of a layer of material formed on the article of substantially uniform thickness and great density and composed of finely divided particles forcibly compacted together and to the surface, and adhesively secured together and to the surface, and conforming to all irregularities in the surface, said layer being strong and durable to withstand manipulation, and friable to admit of its being removed in fragments by mechanical means."

The case was elaborately tried below and has been argued and briefed before this court with great ability. In spite of the ingenuity of appellant's counsel, we are driven to the same result reached by the learned District Judge that the patent is void for lack of invention.

Shortly stated, the alleged invention consists in applying by air brush to white shoes a liquid composition consisting of clay, gum, oil, and water, known in the trade as "white dope." This coating will dry on the shoe, but will remain flexible enough so that the shoe

may be handled during the necessary manufacturing processes, and it then becomes friable, so as to be removable by a rotary brush. Before Lionne, as the record conclusively shows, manufacturers had two methods of protecting their white shoes during the processes of manufacture. The first was by covering the shoe with cloth or paper fastened between the sole and upper, and then cut or torn off after the shoe was finished. This method was fairly expensive, and also unsatisfactory, because the edges of the removed coverings sometimes "grinned." Another method, not mentioned by Lionne in his patent specification, was to apply white dope by a brush or sponge operated by hand. Lionne's alleged invention consisted simply in applying substantially the same material, for the same purposes, by air brush, also an old device, under a pressure of 50 to 75 pounds.

The record shows that there is nothing new about using white dope as protective coverings for white shoes, and that the air brush has long been used by shoe manufacturers for the purpose of applying stain or finishing coatings to the edges and bottoms of soles, as it has also been used in other arts for applying paints and paintlike mixtures, generally. It would be going very far to say that a shoe manufacturer, who had already found it advantageous to use air brushes in applying stain to the edge or bottoms of soles, would not naturally think of deriving like advantage from using air brushes, instead of hand brushes, in applying white dope to protect white shoes during the process of manufacture. The obvious fact that the dope can, as the court below pointed out, be put on two or three times as fast by air brush as by hand, would certainly—apart from any other advantage, real or suppositious—lead to the use of the air brush.

[1] If we assume (what is on this record doubtful) that the air brush gave a somewhat better coating than the hand brush or the sponge, the inference is that like improved results accrued from the use of the air brush on the edges or bottoms of soles. Apparently any paint or paintlike substance would, when applied by the air brush, fill interstices, and possibly coat more evenly, than when merely spread by a hand brush. We agree with the court below that the case falls within the principle that it is not invention to use an old process for a new and analogous purpose. Walker on Patents (5th Ed.) § 38; Brown v. Piper, 91 U. S.

37, 23 L. Ed. 200; In re Braselton, 51 App. D. C. 31, 273 F. 759.

In general, we agree with the reasoning of the court below on this part of the case, and with his conclusion that there was no invention. But, if there were otherwise any doubt as to the soundness of the conclusion, we think that doubt would be resolved by considering the history of the patent in the Patent Office.

In Lionne's original application, claims 12, 13, and 14 were as follows:

"12. The method of temporarily protecting the surface of an article, which consists in applying a fluid composition in a finely divided state to the surface to be protected to produce thereon a layer of dense formation, drying said layer and subsequently removing said layer in fragments.

"13. The method of temporarily protecting the surface of an article, which consists in *forcibly applying* a fluid composition in a finely divided state to the surface to be protected to produce thereon a layer of dense formation, drying said layer and subsequently removing said layer in fragments.

"14. The method of temporarily protecting the surface of an article which consists in *forcibly applying* in finely divided condition a coat of inert material intimately associated with an adhesive substance, drying said coat and subsequently removing said dried coat in fragments."

We have italicized the significant words "forcibly applying."

The patent examiner said: "Claims * * * 12 and 13 are rejected as not patentable over coating with lacquer." Also: " 'Forcibly applying' is a common and obvious way of applying any coating material. No patentable novelty is involved in this limitation." Thereupon, Lionne amended his application by canceling claims 13 and 14, and inserting in claim 12 the words "thick viscous" after "applying," so that claim 12, as amended, reads as follows:

"Claim 12. The method of temporarily protecting the surface of an article which consists in applying a thick viscous fluid composition in a finely divided state to the surface to be protected to produce thereon a layer of dense formation, drying said layer and subsequently removing said layer in fragments."

The gist of the argument of appellant's learned counsel now is that, notwithstanding this history, claim 12 is to be read as though it contained the words "forcibly applying." It is unnecessary to discuss in detail the nu-

merous cases dealing with the effect of canceled claims. Millard v. Chase, 108 F. 399, 47 C. C. A. 429; Morgan Envelope Co. v. Albany Perf. Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500; Richardson v. Amerian Pin Co. (C. C.) 73 F. 476; United States, etc., Co. v. Sturtevant Co. (C. C.) 122 F. 470, 475; Royer v. Coupe, 146 U. S. 524, 530, 13 S. Ct. 166, 36 L. Ed. 1073; Donchian v. Kingston (C. C.) 138 F. 890, 894; United Shoe Machinery Co. v. Greenman, 146 F. 759, 77 C. C. A. 22.

[2] It is enough for present purposes to hold that, with this history in the Patent Office, the patentee is not entitled to the broad construction now urged by the appellant of the claims now sued upon. We cannot read into claims 1 and 12 what the patentee read out of his patent when he canceled the original claims 13 and 14. But this is what the appellant's learned counsel seeks to have us do. Rejecting that proposition, we see nothing else in the case.

Perhaps, however, it is well to add that there are numerous other difficulties in the appellant's way. Among others, the white dope used by the defendant is not a "thick viscous fluid composition," referred to in the specification of the patent as "very thick, about as thick as molasses, and will just flow at room temperature." The record shows that the white dope fluid used by both plaintiff and defendant is only about one-tenth the viscosity of molasses. Infringement is not proved. .

[3] Apparently, the patent examiner thought, after Lionne amended his application, that the gist of the alleged invention consisted in using a thick viscous fluid as a protective covering and therefore allowed the application. But it is not now even argued that the alleged invention lies in using a new, thick, viscous fluid as a protective covering. On the contrary, we are asked to construe the patent as covering the use of the old, comparatively thin white dope, for the old protective purpose, applied by the old air brush. But, as noted above, no significance can, in the light of the history of the patent application, be laid on the use of force by means of the air brush or on the results produced by force. Everything except forcible application is, on the appellant's own propositions, admittedly old. It follows that no new and useful process or article was disclosed by the patent.

Our conclusion, that the patent is void for want of invention, makes it unnecessary to consider whether it is not also void, as the court below held, by reason of prior knowledge and use by others. We may, however, add that that evidence goes far to support the inference above noted, that manufacturers, having both air brushes and white dope in use in their factories, would naturally think of combining their use in order to get more economical and efficient results.

The decree of the District Court is affirmed, with costs to the appellee.

BINGHAM, Circuit Judge, concurs in the result.