### FRIEND et al. v. BURNHAM & MORRILL CO.
### No. 2508.

Circuit Court of Appeals, First Circuit.
Jan. 19, 1932.

Francis J. V. Dakin, of Boston, Mass., for appellants.

Carl C. Jones (of Bradley, Linnell & Jones), of Portland, Me., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Maine dismissing on motion a bill in equity praying for an injunction and accounting, and based on an alleged infringement of a patent covering a process for canning baked beans.

In the description of the process contained in the application, the patentee states that it consists of three steps: "First, the baking of the beans; second, the canning of the baked beans while hot; and, third, the sterilizing of the cans." He also in the application more particularly described the third step as consisting of subjecting the canned beans to a temperature of from 220 degrees to 240 degrees F. for an hour or more, and the cooling in water of faucet temperature.

The only element in their process of canning baked beans that the plaintiffs, who are assignees of the patent, claim is novel, is the second step, viz. that of transferring them into cans after being baked, while "still hot," or at a temperature of approximately 180 degrees F.

The eight claims filed and allowed are not essentially different, except that claims 4, 7, and 8 add to the third step the cooling after sterilization. Claims 2 and 8 are typical, and are as follows:

"2. The method of preparing and canning beans consisting in baking the beans, together with pork, under a high temperature until they are thoroughly baked, said pork and beans being in the approximate proportions of thirty-five pounds of pork to one hundred pounds of beans, then transferring said pork and beans into suitable cans while mantaining the temperature of said pork and beans at approximately one hundred and eighty degrees Fahrenheit, sealing

the cans immediately and then subjecting the sealed cans to steam pressure of a temperature from two hundred and twelve to two hundred and forty degrees Fahrenheit, to sterilize the same."

"8. The method of preparing and canning baked beans consisting in baking the beans under a high temperature until thoroughly baked, then canning the beans while at a temperature of approximately one hundred and eighty degrees Fahrenheit, the cans being sealed immediately on being filled, then sterilizing the same by subjection to a temperature ranging from approximately two hundred and forty degrees Fahrenheit, and, finally, immediately at the conclusion of sterilizing operation, immersing the said cans in cold water to cool them rapidly."

The District Court, while recognizing that such a bill should not be dismissed on motion, unless it clearly appears to be without equity, held that the patent issued to the plaintiffs in this case, on its face and upon facts of common knowledge, of which the courts may take judicial notice, described no new invention, or, in other words, that the patentee in his specifications and claim had described nothing new in the art of canning cooked foods, that all he claimed as new was already well known and practiced by every housewife and by every person engaged in the canning business.

 While many cases may be cited where the courts have refused to dismiss on motion a bill for infringement, since the courts, as a general rule, give the patentee the benefit of any doubt and hear the evidence on both sides, yet whenever it is clear that no invention is described in the patent, or from common knowledge the several steps in the process described in the application and claims are old and their combination produces no new result, the courts have not hesitated to dismiss. Richards v. Chase Elevator Co., 158 U. S. 299, 15 S. Ct. 831, 39 L. Ed. 991; American Fibre-Chamois Co. v. Buckskin-Fibre Co. et al. (C. C. A.) 72 F. 508; Lange v. McGuin (C. C. A.) 177 F. 219; Luten v. Kansas City Bridge Co. (D. C.) 272 F. 533; American Safety Device Co. v. Liebel-Binney Const. Co. (C. C. A.) 243 F. 575; Victor Talking Machine Co. v. Hawthorne & Sheble Mfg. Co. (C. C.) 168 F. 554; Hogan v. Westmoreland Specialty Co. (C. C. A.) 154 F. 66; Wills v. Scranton Cold Storage & Warehouse Co. (C. C. A.) 153 F. 181, 184; Chinnock v. Paterson, P. & S. Tel. Co. (C. C. A.) 112 F. 531, 533.

In Strom Mfg. Co. v. Weir Frog Co. (C. C. A.) 83 F. 170, 172, the court said: "In support of the appeal it is first contended that the court erred in disposing of the case made by the bill on demurrer. It is claimed that this course was too summary, and that the justice of the case could have been better subserved by awaiting the proof and obtaining the aid of those conversant with the art in elucidation of the matter of the invention. But it is no longer open to question that where the case as presented is clear, and the court finds no difficulty in understanding the character and scope of the invention from the patent itself when tested by the common knowledge pertaining to it, and thereupon discerns that the patent is not sustainable, the proper and expedient course is to dispose of the case on demurrer, and thus put an end to useless litigation."

██ In determining whether a patent covers a process, the conception of which involves invention, the court is not required to shut its eyes to matters of common knowledge or of things in common use. King v. Gallun, 109 U. S. 99, 101, 3 S. Ct. 85, 27 L. Ed. 870. The court may take into consideration common or general knowledge tending to show that the device or process described in the patent is old or lacking in invention, and the court may refresh and strengthen its recollection of what facts are of common and general knowledge at the time of the application for the patent by reference to any printed source of information which is known to the court to be reliable and published prior to the application for the patent. American Fibre-Chamois Co. v. Buckskin-Fibre Co., supra, page 511 of 72 F.

The District Court in this case was warranted, therefore, in taking judicial notice of any common or general knowledge relating to canning cooked foods, and to refresh his recollection by reference to standard publications. Brown v. Piper, 91 U. S. 37, 42, 23 L. Ed. 200; Luten v. Allen et al. (D. C.) 254 F. 587; King v. Gallun, supra; American Fibre-Chamois Co. v. Buckskin-Fibre Co., supra; Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 S. Ct. 846, 35 L. Ed. 521; Ferro Concrete Const. Co. v. Concrete Steel Co. (C. C. A.) 206 F. 666; Wright v. Wisconsin Lime & Cement Co. (C. C. A.) 239 F. 534; 15 R. C. L. p. 1061.

The District Court found that the method of baking the beans described in the patent was the method substantially used in every New England household, and that is conced-

ed by the plaintiffs. The third step in the process described in the patent is also conceded to be a necessary part of the process of canning cooked foods and practiced in every canning establishment as well as in the household, viz., that of processing or sterilizing the cooked food after being transferred into the cans. The plaintiffs apparently do not rely on the fourth step, viz., the cooling after processing, since it is also well known and practiced in canning corn and other cooked foods.

■ It is the second step on which the plaintiffs rely, though no claim is made therefor in the application, except in combination with the other well known steps in the process, but which the plaintiffs now say is necessary to produce the results they have attained in canning baked beans, viz., the transferring of the baked beans from the crocks in which they are baked into cans while "still hot," or at a temperature of approximately 180 degrees F.

The District Court, however, held, and correctly, that there was nothing new in the canning art in transferring cooked food into jars or cans while hot, it being necessary both to insure an "exhaust," as it is termed, or vacuum, and to prevent the introduction of injurious bacteria from the air, and to enable the sterilizing process to operate more effectively. The housewife does it with her cooked preserves and food, either by transferring directly from the kettle on the stove in which they were cooked, or at least immediately after the cooking is finished, to her jars, which usually are also heated. The commercial canner of corn and other cooked vegetables does it for the same reason.

The only question involved here is whether the plaintiffs invented anything new when they discovered that they got the best results in canning baked beans when they kept them at a temperature of 200 degrees to 212 degrees F. while being transferred to the cans, and that, if the temperature of the baked beans was not approximately 180 degrees F. when in the cans ready for processing, it might result in "sours" or in "swells" or "springers," as cans which bulge at the ends are termed in trade.

In support of the specification in his application, that the baked beans must be canned while hot, or at a temperature of approximately 180 degrees F., and in defining particularly the second step in his process, which he says is one of the most important parts of his invention, the applicant makes the following very significant statement as to how he arrived at what he now claims is the novel and essential element of his process, and which clearly shows that his present specification of "approximately 180 degrees F.," as the District Court found, is in fact merely stating generally what is practiced by canners in other branches of the art:

"The second step of the process consists in canning the beans *immediately at the conclusion of the baking and while they are still hot and this step is one of the most important parts of my invention.* Any suitable means may be used for accomplishing this result and one such is as follows. When removed from the oven, the beans are immediately transferred from the crocks to a large jacketed kettle which is kept at a temperature of between 200 and 212 degrees Fahrenheit by means of hot water fed with live steam circulated through the jacket. The kettle is preferably arranged in close and convenient proximity to a filling table and a sealing machine of any suitable construction so that the cans may be filled and sealed without any appreciable lapse of time between the filling and the sealing operations. * * * This work may be performed rapidly and when so done, the temperature of the beans does not drop appreciably. *I have found from exhaustive tests that the temperature at the time of sealing ranges from 182 to 190 degrees Fahrenheit.*" (Italics supplied.)

This is merely stating in degrees of temperature what every canner and housewife has known for years, that cooked food must be canned *while hot.*

That the patentee really discovered nothing patentable in ascertaining that the temperature of the baked beans when transferred from their steam-heated kettle to the cans was approximately 180 degrees F. is obvious from a reference to but one publication, and from the method by which he arrived at this conclusion as set forth in his specifications above quoted.

On page 4 of Bulletin 196, issued May 29, 1915, by the United States Department of Agriculture, entitled "Methods followed in the Commercial Canning of Foods," there appears: "Cans sealed at 160 degrees to 180 degrees F. and stored at from 60 degrees to 80 degrees F. will show a very strong vacuum, while those packed cold or nearly cold and stored in a warm place will show no vacuum and may show actual pressure, becoming springers."

And on page 8 of the same publication: "If the product is poured in the cans very hot, 180 degrees F., the expansion which it has undergone will insure sufficient space. In general, any fruit or vegetable sealed at a

temperature of 160 degrees F. or higher will have sufficient head space to prevent springers or flippers."

And again on page 59 with reference to canning sweet corn: "The care with which the cooking is done before the corn enters the can determines in a large measure its appearance. Too much brine will give a sloppy can, while too little brine a dry can. Insufficient cooking will leave the brine and corn separated; the quantity of brine may be right but the corn may be dry in the bottom of the can and most of the brine on top, or they may be mixed but not blended. The preliminary heating is done by steam, using automatic machinery, which heats and evenly mixes the corn and brine and at the same time fills the can. *The corn enters the cans at about 180 degrees F.,* and the capping is done in the usual manner." (Italics supplied.)

It thus appears that a temperature of 180 degrees F. at which certain cooked foods should be transferred into cans in order to insure preservation was known in the canning industry long before these plaintiffs began to can baked beans.

It is apparent that the only problem that these plaintiffs, or any canner, had to solve in canning baked beans commercially, was how to transfer them, when baked in large quantities, to the cans while "still hot." The plaintiffs solved this by transferring them first to a water-jacketed steam-heated receptacle which kept them hot while the filling of the cans was being done. By testing the temperature of the beans as they were transferred to the cans by this method, he discovered that it was between 182 and 195 degrees F., and that it did not drop below 180 degrees F., but how much lower than that temperature baked beans can be canned successfully, he has never found out.

By the word "approximately," together with an explanation of what was covered thereby, the applicant has undertaken to cover the entire range of temperatures at which baked beans can be successfully canned by including the following in his specification: "In view of these conditions, I wish it to be understood that in using the phrase 'approximately one hundred and eighty degrees Fahrenheit' in the following claims, I desire to cover a range of temperature sufficiently high to secure the desired results."

But this is surely no less vague and indefinite than the expression, while "still hot," especially in view of the further statement in his specifications that the patentee has not been able to fix any definite minimum temperature at which baked beans can be successfully canned, and admits it may be successfully done at a temperature of 165 degrees F. or even lower. In other words, then, by the term "approximately 180 degrees F.," he now proposes to cover a range of temperatures from 165 to 190 degrees F. or even higher.

It is obvious, we think, that the element in the process which has enabled the plaintiffs to can baked beans commercially is the steam-heated kettle. The temperature at which the beans could be transferred to the cans by this method was not a discovery of anything new in the art, within the meaning of the Rev. St. § 4886 (35 USCA § 31). The applicant merely by experiment ascertained the result of a process adopted by him which was necessary to insure success when baked beans were canned in large quantities; but the steam-heated kettle is not claimed as a part of the invention; indeed, it could not be, since that, too, is old. It was merely adapting a method in common use in hotel and restaurant kitchens to a new use.

■ "It is not a patentable invention to apply old and well-known devices and processes to new uses in other and analogous arts." Lovell Mfg. Co. v. Cary, 147 U. S. 623, 627, 13 S. Ct. 472, 477, 37 L. Ed. 307; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 S. Ct. 601, 36 L. Ed. 327.

■ But there is also another ground in support of the contention that each of the several steps in the process described in the patent is old. It is clearly a combination patent. The patentee does not claim invention for any one of the steps, but for the combination. In such cases it is presumed that all the several elements of the combination are old, and the validity of the patent must depend on a new result obtained by the combination. Campbell v. H. T. Conde Implement Co. (C. C.) 74 F. 745; Hay v. S. F. Heath Cycle Co. (C. C. A.) 71 F. 411; Detroit Motor Appliance Co. v. Burke (D. C.) 4 F.(2d) 118.

In Richards v. Chase Elevator Co. (rehearing) 159 U. S. 477, page 486, 16 S. Ct. 53, 54, 40 L. Ed. 225, which was for a combination claim, the court said: "There is clearly no novelty in the individual steps of this transfer. Indeed, the failure to claim either one of the elements separately raises a presumption that no one of them is novel."

Neither is the product new in the sense of being the result of an invention. The re-

sult is simply canned cooked food. Canned baked beans, it is true, are different, as a food, from canned corn or canned peas, but all are canned cooked food—analogous products of a process readily adapted by any one versed in the art of canning to the particular food to be canned. Packing Co. Cases, 105 U. S. 566, 571, 572, 26 L. Ed. 1172; Pearce v. Mulford, 102 U. S. 112, 118, 26 L. Ed. 93; Richards v. Chase Elevator Co., 158 U. S. 299, 301, 15 S. Ct. 831, 39 L. Ed. 991, Rehearing 159 U. S. 477, 487, 16 S. Ct. 53, 40 L. Ed. 225; Werk et al. v. Parker et al., 249 U. S. 130, 39 S. Ct. 197, 63 L. Ed. 514.

That no one had before successfully canned baked beans, at least in commercial quantities, may well have been, because no one in New England, where they know how to bake beans, had realized there was a sufficient public demand for such a product until the plaintiffs had demonstrated it. Boston Pencil Pointer Co. v. Automatic Pencil Sharpener Co. (C. C. A.) 276 F. 910; Lionne Co. v. Cushman-Hollis Co. (C. C. A.) 7 F. (2d) 83; Packing Co. Cases, 105 U. S. 566, 26 L. Ed. 1172.

That baked beans had been successfully canned before these plaintiffs entered upon the business, though not in commercial quantities, is evident from the following directions for canning baked beans found in a publication entitled "Every Woman's Canning Book," published in 1918:

" 'Boston Baked Beans.'

"To serve home-baked Boston beans the year round, without the inconvenience of a hot kitchen fire in the summer, or to have them as an emergency dish for lunch, plan as follows: When baking beans in the customary way, cook an extra pint of dry beans. *When cooked, have at hand two hot pint jars with rubbers in place. Fill with beans within one inch of top, put on cover, and seal tightly. Process one and one-half hours.* Beans prepared thus will keep indefinitely, and no commercial brand of baked beans on the market compares with home-baked beans canned in this way." (Italics supplied.)

This shows the exact process used by these plaintiffs, except the housewife has no occasion to use a steam-heated kettle for keeping two pints of beans hot, but, "when cooked," she must *"have at hand two hot pint jars with rubbers in place,"* and, after filling the cans, must process them, a step well understood by every housewife and canner.

The language of the court in Brown et al. v. Piper, 91 U. S. 37, 39, 40, 41, 23 L. Ed. 200, seems to be especially applicable to the facts in this case. The patent in that case was issued for a method of preserving fish and other articles in a chamber and cooling the chamber by means of a freezing mixture so applied that no contamination shall exist between the interior of the preserving mixture and those of the vessels in which the freezing mixture is placed. The claim for the invention was not of the discovery of means of artificial congelation, or of the fact that no decay takes place in animal substances so long as they are kept below the freezing point of water, but the practical application of these principles to the art of preserving fish and meats. The court said: "The patent is not for the principle long and well known to physicists, that a low degree of cold, like a high degree of heat, prevents the decay of animal matter; nor is it for the freezing of the articles to be preserved before or after they are placed in the preserving chamber; nor is it for applying, by means of an apparatus with any particular details of construction, cold to the articles to be preserved; nor is it for the frigorific effect of the freezing mixture upon the atmosphere of the inner chamber; but it is for the application to such articles of the degree of cold necessary to preserve them, by means of 'a close chamber,' in which they are to be placed, and 'a freezing mixture, having no communication with the atmosphere of the preserving chamber.' "

The court then said: "The defence relied upon in the answer is the want of novelty; and several instances of prior use and knowledge, with the requisite circumstances of time, place, and persons, are alleged."

The court, continuing, suggested that it could consider only one, and instanced the rather forbidding one of a corpse preserver, on which a patent had been issued, of which the court said: "Here was the application of the requisite degree of cold exactly in the manner called for in the specification of the appellee.

"This is hardly denied; but it is insisted that the process was never applied by the witness to the preservation of fish and meats.

"The answer is, that this was simply the application by the patentee of an old process to a new subject, without any exercise of the inventive faculty, and without the development of any idea which can be deemed new or original in the sense of the patent law. The thing was within the circle of what was well known before, and belonged to the public. No one could lawfully appropriate it to himself, and exclude others from using it in

any usual way for any purpose to which it may be desired to apply it.

"This is fatal to the patent."

This case follows on parallel lines with the present case. There, it was the application of cold to preserve fish and meat; here, it is the application of heat to preserve cooked food. There, it was the application of cold in the same manner as in the familiar ice cream freezer; here, it is the application of heat in the same manner, and is commonly employed by the housewife in canning cooked fruits or foods. The discovery that it was necessary to can baked beans while at a "temperature sufficient to secure the desired results," or from 165 degrees to 190 degrees F., or even at approximately 180 degrees F., added nothing new to the art of canning foods. Everyone familiar with the art knew that cooked food must be canned while hot, and could readily have devised a means, or adopted the method used by the plaintiffs of keeping the baked beans at the necessary temperature when canning in commercial quantities "to secure the desired results" while transferring them into cans for sealing and processing.

The court further said in Brown et al. v. Piper, page 44 of 91 U. S.: "Examined by the light of these considerations, we think this patent was void on its face, and that the court might have stopped short at that instrument, and without looking beyond it into the answers and testimony, sua sponte, if the objection were not taken by counsel, well have adjudged in favor of the defendant."

The decree of the District Court is affirmed with costs.