**DORR CO., Inc., et al. v. YABUCOA SUGAR CO.**

No. 3598.

Circuit Court of Appeals, First Circuit.

May 2, 1941.

---

William H. Davis, of New York City (Herbert A. Baker, of Boston, Mass., and John E. Hubbell and George E. Faithfull, both of New York City, on the brief), for appellants.

Charles L. Byron, of Chicago, Ill., Earle T. Fiddler, of San Juan, P. R., and Russell

---

H. Clark, of Chicago, Ill., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

The complaint charges infringement of two patents owned by the plaintiffs. This is an appeal from a judgment of the District Court dismissing the bill of complaint on the ground that both the patents are invalid.

One of the patents in suit is McHugh No. 1,503,657, issued August 5, 1924, now owned by the plaintiff The Dorr Company, Inc., and under which the co-plaintiff Compania de Ingenieros Petree y Dorr is exclusive licensee. The other patent in suit is Coe No. 1,686,203, issued October 2, 1928, now owned by the said Petree y Dorr.

Plaintiffs rest their case for infringement upon claims 1, 3 and 4 of McHugh and upon claim 2 of Coe. Each of these claims has been held invalid by the court below.

The McHugh patent covers a described process for clarifying sugar juice in the manufacture of sugar. The Coe patent is for an improved thickening or clarifying apparatus, "particularly adapted for the treatment of hot solid-liquid suspensions such as the muds and solutions obtained in the process of sugar production". In manufacturing sugar the defendant uses a so-called Seip clarifier, the accused apparatus, covered by patent No. 2,103,828 (1937). It is alleged that in using the Seip clarifier to clarify cane sugar juice the defendant is infringing the Coe apparatus patent and at the same time is practising the clarifying process patented by McHugh.

The District Court found that "The accused device infringes both the Coe and the McHugh patents, assuming the validity of the said patents". This finding is challenged by the defendant; but it is unnecessary for us to examine into its correctness, because we feel obliged to affirm the court below in its conclusion that the McHugh and Coe claims in suit are invalid.

McHugh claim No. 1 describes a process for separating sugar juices from solid matter admixed therewith which comprises (1) "subjecting a mixture of sugar juice and solid matter in a stratum of substantially uniform depth to sedimentation and decantation in the course of which solid matter settles by gravity towards the bottom of the stratum and sugar juice is continuously decanted from near the top of the stratum, (2) continuously feeding a mixture of sugar juice and solid matter to the stratum, (3) continuously and mechanically moving the settled solid matter in proximity to the bottom of the stratum towards the center thereof, and (4) continuously discharging solid matter from near the bottom of said stratum in the form of a thickened product of such density that the total amount of solid matter discharged in a given time interval is approximately the same average amount of solid matter fed to the stratum during the same time interval". (Numbering of the steps supplied.) In practising the process McHugh's specifications recommend the use of a "gravitational separator, preferably of the Dorr thickener type", a tank structure in which solid matter is separated from the liquid.

It is conceded that all the steps in the process set forth in claim 1 are old, as applied to liquids generally, as distinguished from sugar juice clarification. The whole process is disclosed, for example, in Blomfield, British Patent No. 110,188 (1917), a tank apparatus for separating liquids from solids in fluid suspension by the continuous gravity settling process. A similar disclosure is made in the expired Dorr patent No. 867,958 (1907), which covers an apparatus primarily for the treatment of metallurgical slimes, "but it will be understood that this apparatus may be employed for separating other solid matter from liquid in various processes".

The District Court found that sugar clarification is closely analogous to, if not identical with, the art of clarifying dirty liquids generally. There is considerable evidence in the record so indicating. For example, Pickering, British Patent No. 4834 (1901), covers a continuous subsider "for cleaning sugar juice, or any other liquid subject to subsidence". Likewise, Deming No. 885,451, describes a "process of treating liquids carrying solids in suspension, and specifically saccharine solutions". Coe himself, in the patent in suit, does not limit his apparatus to sugar clarification. In his specifications he describes it as "particularly adapted for the treatment of hot solid-liquid suspensions such as the muds and solutions obtained in

the process of sugar production"; and broadly he claims "an apparatus for separating solids in hot solid-liquid suspensions".

It is contended, however, that in two respects sugar juice clarification presents unique problems which serve to differentiate it from the general art of separating liquids from solids in suspension:

The impure sugar juice with its sludge component, before being poured into the settling tank, is heated to about its boiling temperature. Among the impurities of the sugar juice are certain albumens which are coagulated when the heat is applied. The coagulated albumens are in the form of flocks which differ slightly in specific gravity from the sugar juice in which they are suspended and are hard to separate from the juice. Milk of lime is added to neutralize the natural acidity of the sugar juice and to accelerate the flocculation of some of the impurities which must be removed from the juice. All this, of course, was standard practice in the art of clarifying sugar juice long before McHugh. It may be that the particular albumen impurities found in unclarified sugar juice are not present in other liquids such as metallurgical slimes, sewage and dirty water, in the treatment of which the Dorr and Blomfield type of clarifiers had previously been used. But flocculation in the process of sedimentation is not peculiar to sugar juice, as the plaintiffs' expert witness Dennis conceded. Peck No. 1,392,214 (1921), covering an apparatus for treating sewage, states that "the treated sewage is subjected to sedimentation and decantation to settle out the flocculated particles, called the activated sludge, and to permit the escape of a relatively clear and stable effluent by overflow". Dorr No. 867,958, previously referred to, describes the pulp passing from the ore pulverizer as containing cyanide solution or water, sands, and slimes "consisting mainly of amorphous or flocculent matter" derived from the earthy material of the ore. What McHugh claims to have found was that the Dorr type of thickener in general use for separation of liquids from suspended solids was so constructed as to work particularly well in facilitating the settling of flocculent impurities in sugar juice.

The other point which is said to render sugar juice clarification unique is the problem of minimizing sugar losses through inversion and fermentation. These deteriorating chemical changes are the greater the longer the solid impurities are in contact with the sugar juices; hence the time element in the separation process is of importance. This, again, was known long before McHugh. He found, or claims to have found, that the process of continuous decantation of clarified sugar juice, and continuous discharge of the sedimented "mud" from the bottom of a settling tank of the Dorr type accomplishes the separation of the juices from the solid impurities in a minimum of time, thereby avoiding much loss from inversion and fermentation. But the very fact that this problem of chemistry in the manufacture of sugar found its solution, as asserted by McHugh, in the utilization of a process and apparatus already common property in the general art of separating liquids from solids in fluid suspension, indeed suggests that the clarification of sugar juices bears a close affinity to that general art.

The finding of the District Court that sugar juice clarification is closely analogous to, if not identical with, the art of clarifying dirty liquids generally cannot be held to be clearly erroneous, and is accepted by us.

Even in the narrow field of sugar juice clarification the McHugh process has been largely, although not altogether, anticipated by the prior art. Continuous sedimentation in a settling chamber and continuous decantation therefrom of clarified sugar juice are shown in Pickering, British Patent No. 4834 (1901). This is true also of Keller, No. 1,345,090 (1920), which makes provision, in addition, for the withdrawal of settled mud from the bottom "either continuously or intermittently, as may be desired". Likewise, Tiemann, British Patent No. 25,644 (1908), discloses at the bottom of the settling chamber, in connection with the discharge pipe, "a piston or a pump, the stroke and the number of revolutions of which is adjustable, in order to adapt the discharge to the quantity of the precipitates and to their desired amounts of condensation and washing".

It is true that in none of these thickeners used in sugar juice clarification prior to McHugh was the bottom of the settling tank substantially horizontal as in the Dorr type of thickener recommended by McHugh. They were all of the steeply-sloped cone type, which was also characteristic of the Deming clarifier extensively used in clarifying sugar juice by a continuous

524

sedimentation and decantation, as shown in Deming process patent No. 885,451. The sedimentation and decantation in Pickering, Keller, Tiemann and Deming do not take place "in a stratum of substantially uniform depth", which was a distinguishing phrase introduced into the McHugh claims.

The plaintiffs make much of the fact that McHugh was the first to use in sugar juice manufacture continuous thickeners of the Dorr, or horizontal bottom, type. Mud settling thereon will not slide off by gravity, but must be removed by mechanically operated scrapers. It is claimed that these scrapers have an important mud-compacting effect impossible to attain in clarifiers of the steeply-sloped cone type; that as a result a much greater percentage of the clarified sugar juice is immediately decanted off than from clarifiers of the Deming type, and correspondingly much less of the juice remains entrapped in the sedimented mud, to be recovered only by subsequent filtration operations. Sugar losses from inversion and fermentation are thus minimized, as previously explained.

But the desirability of separating the sugar juices and the solid impurities as rapidly as possible to prevent inversion losses was well known. It would hardly seem to have required a flash of inventive genius for McHugh to have tried out in a closely analogous field the teaching of Dorr No. 867,958, whose specifications discuss the importance of settling tanks with substantially horizontal bottoms in the rapid and efficient separation of solid impurities from liquids by a decanting process. Dorr points out: "It will be understood that where decanting vessels with steeply inclined bottoms are employed, there is constant danger of an objectionable agitation of the liquids when the slimes, after accumulating on the steeply inclined bottoms, separate therefrom and fall rapidly down to the discharge opening of the vessel * * *. The bottom may be made horizontal or only slightly inclined so as to avoid the agitation of the liquid by the falling of the slimes, while the slimes, as fast as required, are detached from the bottom of the vessel and moved downwardly to the discharge opening without interfering with the settling operation." The action of the mechanical scrapers is explained by Dorr. They slowly, gently and continuously moved the thickened material toward the discharge outlet. "This will serve to remove the slime from

the bed fast enough but without causing any such agitation in the liquid as would interfere with the subsidence of the contained solid material."

■ As respects claim 1 of McHugh we think the language of Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U. S. 464, 473, 55 S.Ct. 449, 453, 79 L.Ed. 997, is pertinent: "The application of an old process to a new and closely analogous subject-matter, plainly indicated by the prior art as an appropriate subject of the process, is not invention." To the same effect see Brown v. Piper, 91 U.S. 37, 41, 23 L.Ed. 200; Friend v. Burnham & Morrill Co., 1 Cir., 55 F.2d 150, 153.

■ Plaintiffs urge that McHugh's process for sugar clarification was not formulated until after long and elaborate experiments; that much difficulty was encountered in overcoming the initial skepticism of the sugar industry as to the efficiency and economy of his process practised with a Dorr type of horizontal-bottomed thickener. In some circumstances evidence of this sort is relevant on the issue of invention. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 60, 43 S.Ct. 322, 67 L.Ed. 523; McKee v. Graton & Knight Co., 4 Cir., 87 F.2d 262, 264. But it is not conclusive, of course, and in the case at bar we do not think it is controlling. It is not surprising that sugar manufacturers should have hesitated to scrap existing installations and methods conceded to have been commercially successful, until the claimed economies and increased efficiency resulting from the use of a Dorr type of thickener should have been demonstrated by quite extensive experiments.

Claim 3 of McHugh repeats without substantial variation the steps in the process described in claim 1, and adds an additional step: "and subjecting the discharged thickened product to filtration in a filter of the reduced pressure type in the course of which there is continuously produced a filtrate and a suitably dehydrated filter-cake". The reference is to a vacuum filter, commonly consisting of a rotary drum having a cylindrical filtering medium which is partly submerged in the liquor to be filtered. A reduced pressure or vacuum is maintained on the inner side of the filtering medium, as the result of which clear liquor—in this case the sugar juices remaining entrapped in the mud drawn

off from the clarifier—is drawn through the filtering drum, leaving on the outer surface of the drum a cake of solid material which is dried and removed from the drum while the latter is rotating through that portion of its path outside of the liquor to be screened. This type of filter is contrasted with filter presses operating by positive pressure. It is said that the vacuum filter is the only type of filter capable of continuous operation conjointly with the clarifier, though the defendant denies that this is so.

Plaintiffs state the advantages of this conjoint action of the Dorr type of thickener and of the vacuum filter in substance as follows:

McHugh's claim 3 sets forth the first known process of clarifying sugar juice which is fully continuous in the sense that the residue of unclarified sugar juice continuously discharged with the "mud" from the sump at the bottom of the clarifier is continuously recovered thereafter as a filtrate in the continuous filtration of the mud. This constitutes a patentable combination which gives the novel ultimate result of fully continuous clarification, and makes that ultimate novel result practically possible by its novel intermediate result of producing in and discharging from the sedimentation tank a mud sufficiently thick and granular to permit its filtration in a vacuum filter, which is the only type of continuous filter practically suitable for the purpose. No procedure of the prior art had produced a mud of such a character that the sugar juice entrapped in it could be recovered by continuous filtration. The mud withdrawn from a Deming type of clarifier, before being fed into the filter presses, had to be subjected to an intermediate process of redefecation, that is, reheating, reliming and resettling. The substitution of a rotary vacuum filter for the customary filter presses theretofore generally employed in the sugar industry permits continuous filtration without the intermediate redefecation, thereby diminishing sugar losses by inversion. It also results in a decreased labor cost and a reduction in the amount of required floor space for the filtering apparatus.

Many of these assertions are not covered by the findings of fact below, and we doubt whether, on the present record, findings in accordance therewith would be required as a matter of law, at least as to some of them. For instance, defendant's expert Blackwood testified that the mud could be drawn off from a Deming type of clarifier into a tank and pumped from the tank to the filter presses "which is the old way we used at my old place, or you can draw it continuously from the bottom"; that in his experience he did not redefecate the mud discharged from the Deming clarifier before pumping it through the filter presses; that he could handle "most any kind of mud" with a vacuum filter as well as with the old type filter presses. He testified: "I can handle both and get my sucrose and dry mud to .5—I can handle them both." Deming No. 885,451 in his specifications discloses a discharge outlet at the bottom of his tank which "may be provided with three branches as shown, which are connected respectively with the filter presses or bags, the scum tanks, and the suction of the filter press pump, thus permitting a considerable range for the disposal of the precipitate. The filter press being connected directly with the tank may be operated exclusively by the pressure therein, thus avoiding the use of pumps or scum tanks, the necessity of adding water to the scums, the addition of lime to the scums, the necessity of heating the same and the labor incident to the operation of scum tanks." Pickering discloses at the bottom of his tank an "outlet L' leading to the filter presses".

However, conceding all the advantages which are said to result from the practice of the process described in McHugh's claim 3, it still would not constitute a patentable invention. If, as we have held, claim 1 is invalid for want of invention, it seems quite clear that claim 3, merely adding the filtration step, is also invalid. Vacuum filters were not invented by McHugh. The conjoint use of the Dorr thickener with a vacuum filter was known in an analogous field, if not in sugar clarification itself, before McHugh. The District Court was warranted in finding that the Dorr clarifier and the vacuum filter "each performs its own function as it always has done whether or not the clarifier and filter are used conjointly". The purity and amount of sugar juice decanted from the separator tank are the same whether or not a filter mechanism is connected with the outlet for the discharge of the mud at the bottom of the tank. Likewise, the action of the vacuum filter in extracting the sugar juice remaining entrapped in the mud will be the same whether the discharged mud is pumped directly

to the filter, or whether it is discharged into some receptacle and fed into the filter by a separate operation. No doubt there is an advantageous saving of time through the conjoint action of the clarifier and the filter in a continuous operation; but McHugh cannot claim this as a patentable invention of his. There is merely an aggregation of well-known processes and mechanisms "each performing its normal function and producing no new result", as the court below held. Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 356, 59 S.Ct. 897, 83 L.Ed. 1334; Grosjean v. Panther-Panco Rubber Co., 1 Cir., 113 F.2d 252.

Claim 4 of McHugh reads: "The process of separating solid impurities from sugar juices which comprises progressively subjecting the mixture of juice and solids to sedimentation in superposed strata, moving the settled solids to points of collection, discharging the collected solids in a downwardly moving stream, and decanting the clear juice from near the top of each stratum, the feed to a lower stratum passing through the downwardly moving stream of solids discharged from the stratum above." This, the plaintiffs assert, was "the first process used in the clarification of sugar juice, in which the juice undergoing clarification was divided into superposed strata by the trays of a multitray clarifier, and was the first sugar juice clarification process in which the feed to each lower stratum is subject to the beneficial effect of 'internal filtration' by its passage through a stream including the solids settling in and removed from each stratum above".

Plaintiffs' expert Dennis admitted that there was nothing new in internal filtration in connection with the clarification of liquids; that it is bound to take place to some extent "whether or not you have a single clarifying compartment or a multiple number".

In the sugar clarification field, Tiemann No. 1,007,823 (1911) discloses a tank in which a plurality of bell-shaped trays are arranged in superposed positions. Tiemann points out the improved sedimentation attributable to the process of internal filtration in an apparatus so devised. It is true that the apparatus shown in Tiemann is of the steeply-sloped conical type in which the settled solids are not moved from superposed strata to points of collection by mechanically operated scrapers. It is possible that the internal filtration is therefore not quite as effective as in the horizontal-bottomed tank with multiple superposed trays, shown in Fig. 4 of McHugh. But if it be conceded that McHugh's claim 4 is not literally and exactly anticipated in the sugar clarification art by Tiemann, claim 4 is still invalid. In the general art of separating liquids from solids in fluid suspension Blomfield, British Patent No. 110,188, discloses a horizontal-bottomed tank with multiple superposed trays and mechanical scrapers for moving the settled solids to points of collection. Blomfield discloses the whole process described in McHugh's claim 4 as applied to the clarification of liquids generally; we have previously indicated that sugar clarification is a closely analogous, if not identical art. This is particularly true with respect to internal filtration, as to which it does not appear that sugar clarification presents any peculiar feature not common to the general art of separating liquids from solids in fluid suspension.

■ It follows that McHugh's claim 4 is also invalid.

Coe No. 1,686,203 is, as we have said, a patent on a clarifying apparatus for separating solids in hot solid-liquid suspensions. Claim 2, the only one here in issue, reads:

"An apparatus for separating solids in hot solid-liquid suspensions, comprising a tank, a settling chamber having a circumferential, heat-transferring wall spaced from the corresponding wall of the tank to provide a downwardly extending passage, the settling chamber having an outlet for settled solids and an overflow for clarified liquid, a feed chamber above the settling chamber separated therefrom by a substantially horizontal partition and connected with the passage for the conveyance of material to the lower portion of the settling chamber, and an impelling member in the feed chamber adapted to move the feed toward the circumferential passage whereby to expedite the heating action."

The apparatus and its mode of operation are admitted by the plaintiffs to be accurately described by the following findings of fact of the District Court:

"Plaintiffs' Coe patent No. 1,686,203 discloses a thickening apparatus for the treatment of hot solid liquid suspensions such as the muds and solutions obtained in the process of sugar production. The apparatus consists of a cylindrical tank or

subsidence vessel, having within it a horizontal partition below its upper edge and a cylindrical partition depending from the circumferential edge of the horizontal partition, the horizontal partition and the cylindrical partition dividing the interior of the vessel into an upper or feed chamber; a lower settling chamber, and an annular passage for the downward flow of material from the one chamber to the other, and the settling chamber has an outlet for settled solids at the bottom and an overflow for clarified liquid at the top. A central rotating shaft supports a series of curved arms in the feed chamber immediately above the horizontal partition, to move the material fed into the apparatus toward the annular passage. The horizontal and cylindrical partitions, being made of metal are heat transferring. This combination of mechanical elements constitutes the thickening apparatus of the Coe patent and the subject matter defined in claim No. 2 thereof.

"The patent explains that when hot sugar juices are thickened in this apparatus there is an automatic heat transference through the horizontal partition, through the annular partition and through the outer wall of the tank, whereby the material in the settling chamber has a higher temperature at the level of overflow of the clarified juice from the chamber and a lower temperature where the fresh material enters the chamber under the lower lip of the annular partition, and the settling action is thereby facilitated. The loss of heat through the outer wall of the tank as the liquid moves downwardly in the annular passage between the outer wall of the tank and the annular partition also tends to cause convection currents within the annular passage which promote flocculations and thereby contribute to the clarification of the juices."

The central feature of the apparatus seems to be that disposed within the tank is an interior settling chamber or quiet zone with heat-conveying partitions on the top and sides and open at the bottom, this chamber being separated from the outer walls of the tank by an annular or circumferential passageway down which the feed travels toward the bottom of the tank. The clarifying liquid in the settling chamber is thus sheltered from disturbance and reclouding caused by the continuous introduction of fresh feed into the tank, which would seem to have been a disadvantageous tendency of the old type of Dorr clarifier.

The hot feed flows down over and around the settling chamber. As the plaintiffs put it: "The fact that the clarified juice in the upper settling chamber stratum is hotter than the subjacent feed stratum, in which the clarification phenomenon is occurring, means increased opposition to the movement of the flocks into the clarified juice stratum because the density of the clarified juice diminishes as its temperature increases."

Plaintiffs in their brief attach particular importance to the fact that Coe's settling chamber is separated from the superposed feed chamber by a substantially horizontal partition; and further to the fact that the feed chamber is suitably large to permit the initiation of the process of flocculation in that area before the feed starts down the annular passage. Coe's claim 2 does describe a "substantially horizontal partition" between the two chambers, but his specifications do not seem to attach any functional importance to the *shape* of the segregated settling chamber. Nor does Coe describe the feed chamber as having been specifically designed to initiate flocculation therein. Upon the contrary, in fact, the file wrapper discloses that Coe, in answer to Patent Office citations of Dorr and Blomfield, stated:

"It is further observed that the partition 33 of Dorr and the partition 6 of Blomfield differ entirely from the top of the hood in applicant's thickener. These partitions are used to form settlement chambers for separately treating the feed material. *The chamber above the hood in the present case, is exclusively a feed chamber, the feed is not separately treated, in fact, its progress over and around the hood and to the lower portion of the settling chamber is hastened rather than deterred.* [Italics ours.] The impelling elements in Dorr and Blomfield function to remove the settled material to a point of discharge, whereas the corresponding element in the instant case serves to expedite the movement of the feed to the settling chamber."

A little later in the same document Coe sums it up:

"The invention resides mainly in the distribution of heat and convection by passing fresh hot feed from a feed chamber over and around a settling chamber, and since the means by which this object is attained is not anticipated in the references, it is thought that the case is clearly allowable."

▮ Considering the main feature of the invention as thus claimed by Coe, it seems quite clearly to have been anticipated. Tanks for the clarification of liquids by sedimentation and decantation were of course well-known before Coe. Plaintiffs' witness Dennis conceded that "it was old prior to Coe to use metal trays and partitions in the clarifier for the clarification of sugar juice"; in fact, "that is the only construction that would stand it". Heat transference through the metal partitions was bound to occur—"that's just a law of nature". Coe's apparatus, to be patentable, must go "a substantial step beyond the prior art". Here the advance, if any, "was altogether too slight and obvious". Rosenberg v. Carr Fastener Co., 2 Cir., 51 F.2d 1014, 1019.

Keller No. 1,345,090 (1920) shows a settling tank for the continuous clarification of sugar juice, with interior settling chambers or cones. The incoming hot feed travels through an annular passageway between the settling chambers and the outside walls of the tank. The inventor explains that the warm juice flowing down over the settling chambers or cones "tends to cool more rapidly than that at the interior of the tank, and the natural tendency of the cooling juice is to flow downward. The juice at the center however, is hotter and tends to flow upward, thus providing for a rapid settling and a good separation of the solids from the juice." Keller does not show "an impelling member in the feed chamber adapted to move the feed toward the circumferential passage whereby to expedite the heating action" as in Coe's claim 2. But the only function of the mechanical scrapers in Coe's feed chamber was to convey the feed as rapidly as possible to the annular passage, "so as to keep fresh, hot feed material continually in contact with the outer surface of the top of the settling chamber". This is accomplished in Keller by gravity due to the sharp incline of the upper side of the settling chambers.

Yoder Reissue No. 16,457 (1926) likewise shows an uptake settling chamber in the interior of the settling tank. The incoming feed flows around the sides of this settling chamber. Yoder's uptake chamber is bell-shaped or conical but he explains that "my invention is not limited thereto, as other forms of up-take chamber, such as a cylindrical or tubular chamber extending from the top to adjacent the bottom of tank 1, or a cylindrical chamber open at the bottom and closed at the top may be employed". This anticipates the very shape of the settling chamber in Coe, if indeed the shape is of any particular significance.

The clarifier shown in Deming No. 885,451 (1908) has a conical interior settling chamber open at the bottom and hot feed flowing down around the outside of the settling chamber must necessarily convey some of its heat through the partition to the clarifying liquid within the settling chamber.

Ahlqvist No. 1,526,197 (1925) has a bell-shaped settling chamber in the central part of the tank. The movement of the incoming feed down the circumferential passage is facilitated by mechanically operated scraper blades.

Dervaux, British Patent No. 5340 (1892), shows a plurality of superposed bell-shaped settling chambers within the tank. The incoming feed flows from the feed chamber above through an annular passage between the sides of the settling chambers and the outside wall of the tank. No mechanical scrapers appear in the feed chamber but as to this the same observation may be made as with reference to Keller above.

All these earlier settling tanks are so constructed as to utilize the benefits of heat distribution and convection currents in the process of sedimentation and decantation. If Coe's apparatus is somewhat more efficient in this particular it still would not be patentable, because no new result is achieved. As a matter of fact the Coe patent is a paper patent. The apparatus has never been manufactured or marketed; and the court below therefore said: "I can make no finding as to its utility from actual commercial use." Despite the claimed superior virtues of the Coe apparatus, apparently the plaintiffs have continued to market clarifiers of the refined Dorr type.

It is true that the settling tanks of Keller, Yoder, Ahlqvist, Deming and Dervaux, above mentioned, all have bottoms in the shape of steeply-sloped cones, whereas Coe's tank has a horizontal bottom, with mechanical scrapers near the bottom to move the sedimented mud centrally toward the sump for discharge, as in Dorr and Blomfield. The plaintiffs make much of this differentiation, but we cannot see its relevance in this connection. Coe's claim 2 refers broadly to "a tank" without regard

to the shape of its bottom. No reference is made to an apparatus for subjecting the dirty liquid to sedimentation and decantation "in a stratum of substantially uniform depth" which, as we have seen, was the great talking point in McHugh's process. So far as claim 2 of Coe is concerned the older clarifying tanks above referred to, though their bottoms are not horizontal, constitute anticipations in the prior art. None of them was cited by the examiner in considering Coe's application.

We agree, therefore, with the court below that claim 2 of Coe is invalid.

The judgment of the District Court is affirmed, with costs to the appellee.