## NICHOLS et al. v. SANBORN CO.
### No. 3696.

Circuit Court of Appeals, First Circuit.
Jan. 9, 1942.

Daniel G. Cullen, of Detroit, Mich. (Butzel, Levin & Winston, of Detroit, Mich., and Friedman, Atherton, King & Turner, of Boston, Mass., on the brief), for appellants.

Robert Cushman and William Gates, Jr., both of Boston, Mass. (Roberts, Cushman & Woodberry, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is a suit for infringement of two patents. Plaintiffs allege that all the claims of Nichols patent No. 1,647,710 are infringed by defendant's device, called the Sanborn Cardiette, for taking human electrocardiograms. They allege, further, that all the claims of Nichols patent No. 1,888,139 are infringed by an interference eliminator used in and forming part of another machine called a portocardiograph, also manufactured by defendant.

The district court gave a judgment dismissing the bill of complaint, upon findings that patent No. 1,647,710, though infringed by the Cardiette, was invalid in its entirety for lack of invention, and upon the further finding that patent No. 1,888,139 was not infringed by the interference eliminator in defendant's portocardiograph, no ruling being made on the validity of this patent.

We are content to affirm on the full and convincing opinion rendered by the court below, Nichols v. Sanborn Co., D.C., 35 F. Supp. 707, 712.

As to patent No. 1,888,139, appellants devote only one page of their brief to argument against the finding of noninfringement, and in oral argument they ignored this patent altogether. The district court was certainly warranted in finding, on the evidence, that defendant's interference eliminator operates by quite a different method from that narrowly described in the patent in suit. Nothing need be added to the discussion of the court below on this point.

As to patent No. 1,647,710, it is clear that Nichols has added nothing to the art of medical diagnosis of heart activity by means of cardiograms. Indeed, as found by the trial judge an amplifier constructed with the values of capacity and resistance enumerated in the patent specifications would not be satisfactory for clinical use by a practising physician in taking a cardiogram; the cardiograms so taken were in some instances definitely misleading, "producing from a normal individual a record indicative of a serious heart ailment." It is true, as further found by the court below, "that by selecting proper values of condensers and resistors, different from such as the patent suggests, and using the amplifier circuit shown in the patent, a satisfactory cardiograph could be made." But even after Nichols made the necessary departure from the teaching of the patent in this respect, the Nichols machine still did not produce a better cardiogram, for purposes of clinical diagnosis, than had long been possible with the use of the standard Einthoven string galvanometer. Furthermore, to supply these deficiencies in the patent specifications required the skill of one expert in the electrical art; this could not be done by a practising cardiologist.

As a result, patent No. 1,647,710 is thrown into the basic electrical art, and in determining its validity, consideration must be given to the state of that art at the time Nichols came along. In fact, the claims in suit are not limited to the recording of cardiac activity but describe a method and devices for "recording characteristics of muscular activities within living bodies"; and the specifications even more broadly state that the Nichols cardiograph "can also be applied for recording the potentials developed as a concomitant of any change of state of any material." From the electrical point of view, the recording in the form of a graph of the small variable potentials generated by heart action presents no unique problem. Nichols lays great stress upon his use of a movable coil galvanometer connected to vacuum tube amplifiers, with condensers included in the circuit to suppress the constant potential produced by body activities (generally refered to as the "skin potential") which otherwise would distort the recording of the variable heart voltages. It may be noted that the patent claims are not limited to movable coil galvanometers, but read just as readily upon the use of any standard type of galvanometer, including string galvanometers of the Einthoven type. But laying that objection aside, the evidence

shows that vacuum tube amplifiers, with condensers, arranged in a circuit substantially the same as that shown in the patent, had been used in connection with movable coil galvanometers in marine cable work many years prior to Nichols. As the trial judge found: "This work is much like electrocardiography from an electrical viewpoint, since there is always a high constant current on a marine cable, and the signals are of low frequency." The result produced by Nichols is the same, regardless of the source of the constant and variable potentials.

Nichols also makes much of the feature of portability characteristic of his device. Here again, his claims as finally allowed make no mention of portability. The file wrapper discloses that in his correspondence with the Patent Office Nichols argued that without the use of amplifiers "the galvanometer must be made so sensitive and so large in size that it would render any apparatus including it not portable"; that "by stepping up the feeble potentials of the heart by aid of audions, a smaller and portable galvanometer can be used and this is the new result obtained by the use of applicant's device." But if portability is achieved merely as a result of using an old amplifier circuit and an old movable coil galvanometer for the measurement of weak potentials whether produced by cardiac activity or as "a concomitant of any change of state of any material," the feature of portability obviously cannot be an adequate basis for a claim of invention. However, Nichols in his testimony indicated that there was more to the problem than that; that in "putting wiring in a small place, you have got to be very particular how you arrange that wiring; otherwise you will get interference between currents on one system and then on another. In other words, there will be cross-induction there." If this is the secret of the portability achieved by Nichols, still no invention can be claimed on this score, because the patent discloses nothing as to how to avoid cross-induction in "putting wiring in a small place."

Therefore, quite apart from the prior work of Dr. Forbes and of the Western Electric Company in the field of electrocardiography, so properly emphasized by the court below, we are satisfied that patent No. 1,647,710 is invalid for want of invention, in view of the earlier general electrical art. See Dorr Co., Inc., v. Yabucoa Sugar Co., 1 Cir., 1941, 119 F.2d 521, 524. See, also, Cuno Engineering Corp. v. Automatic Devices Corp., 62 S.Ct. 37, 86 L.Ed. —— decided Nov. 10, 1941.

The judgment of the District Court is affirmed, with costs to the appellee.